IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-CV-00242

| | |
|---|---|
| KIMBERLY LAING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **AMENDED ORDER** |
| ) | |
| FEDERAL EXPRESS CORPORATION ) | |
| d/b/a FEDEX CORP., ) | |
| ) | |
| Defendant, ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Relief from a Judgment or Order [Doc. No. 28]. Defendant did not file a Response to Plaintiff's Motion. Plaintiff's Motion is **GRANTED** and the Court's September 14, 2011 Order remanding Plaintiff's N.C. Retaliatory Employment Discrimination Act and state wrongful discharge claims to the Mecklenburg County Superior Court is amended as follows.

**I. Factual Background:**

Plaintiff Kimberly Laing was an at-will employee of Defendant Federal Express Corporation ("Fed Ex"). Doc. 12-7, Ex. H, Declaration of Bridget Zaborski, at 9. Plaintiff Laing began work as a courier at FedEx in 1988. Doc. No. 15, Ex. 1-1, 1-2, Deposition of Kimberly Laing, at 18:8-10. She remained a courier until she was terminated on June 30, 2009. Doc. No. 16, Ex. 14, Termination Letter from Carolyn Scott, at 2.

Plaintiff Laing's employment history includes a list of disputes between herself and FedEx management including a termination for falsification in August 2005. Doc. No. 16-6, Ex. 16, Letter from Tim Merida, at 2. A few months prior to her first termination, Plaintiff received

two warning letters: one for disruptive conduct and another for falsification. Laing Dep. at 169:11-25. Through the Guaranteed Fair Treatment Procedure ("GFTP"), her termination was overturned, but it was determined that Plaintiff Laing had not followed proper delivery procedures. Merida Letter at 2. The supervisor conducting the GFTP thanked Plaintiff for readily disclosing information but warned her that she must follow proper delivery procedures in the future. *Id*.

The next dispute between Plaintiff and Defendant FedEx occurred in February 2008 when Plaintiff requested leave to treat her pneumonia under the Family and Medical Leave Act ("FMLA"). Plaintiff was out sick from February 22 through February 26th, 2008. Doc. No. 15-9, Ex. 8, Deposition of Stanley Tolliver, at 87:14-17. On the 25th, she saw a doctor and was diagnosed with pneumonia. Laing Dep. at 35:7-11. Plaintiff then contacted her manager, Ms. Carolyn Scott, and requested FMLA leave for the time she had been out. *Id*. at 36:5-8. Ms. Scott called her back and informed her that the Station Manager, Wade Dark, had denied her leave and told her to come into work. *Id*. at 35:9-14. Plaintiff alleges that Wade Dark forced her to work more than four days while still sick, but her own deposition testimony states that he told her to go home and she refused. *Id*. at 38:10-12; 36:18-23. Mr. Dark was apparently unaware that she had pneumonia. *Id*. at 36:20-21. Plaintiff Laing asserts that Mr. Dark had access to her doctor's report the night before when he told her to return to work, though she suggests he may not have seen them until the next morning when Laing had already arrived at work. *Id*. at 60:3-10. Plaintiff Laing did submit paperwork that she was diagnosed with pneumonia which was received and signed by HR Manager Stanley Tolliver on February 29, 2008. Tolliver Dep. at 85:20-21. Stanley Tolliver granted Plaintiff FMLA leave for the days she missed work (February 22-28, 2008). *Id*. at 87:16-17.

About a month later, on March 17th, Plaintiff Laing injured herself when she tripped on uneven pavement while making a residential delivery. Laing Dep. at 39:19-40:25. The fall severely damaged Plaintiff's knee; the knee was so swollen that a doctor asked her if she had been shot. *Id*. at 45:7-19. On March 18th, 2008, Plaintiff Laing went to Concentra Medical Center as required by Defendant FedEx's workmen's compensation plan. Laing Dep. at 40:9-41:4; Tolliver Dep. at 37:25-38:4. Concentra suggested that Plaintiff needed physical therapy for her knee. Laing Dep. at 42:12-14. Plaintiff's manager, Ms. Scott, asked Plaintiff to postpone physical therapy until they found people to cover her route. *Id.* at 43:3-9. Plaintiff began attending physical therapy during her lunch break. *Id*. at 43:3-44:4. She did not request leave time for her injury. *Id*. 50:14-16. After about four weeks of physical therapy, Wade Dark requested that Plaintiff discontinue her physical therapy because it was interfering with her work. *Id*. at 48:12-22.

Also during this time, Plaintiff was attempting to get Concentra and Sedgwick, Defendant's insurance provider, to approve her to see an orthopedic specialist. *Id*. at 44:13-18, 51:17-22. Tolliver had explained to Plaintiff that with workers' compensation claims all procedures needed to be approved by Sedgwick to avoid billing problems. Tolliver Dep. at 37:19-38:4. After seven months, Plaintiff had still not been referred to an orthopedic specialist; she called Stan Tolliver in November 2008 and explained to him that she felt she needed an attorney to get treatment. Laing Dep. at 63:1-12. The Sedgwick case manager, Kalinda Williams, called, apologized for "dropping the ball", and scheduled an orthopedic specialist appointment for Plaintiff Laing. *Id.*

Plaintiff Laing was seen by Dr. Ronald Singer on December 29, 2008. Doc. No. 15, Exhibit 10, OrthoCarolina Work Status Form, at 1. He ordered surgery on her knee as soon as

possible but did not impose any work restrictions at that time. *Id*. The surgery was scheduled for March 23, 2009. Laing at 65:21-25. She informed Mr. Tolliver that she would need leave for the surgery on March 17, 2009, and her FMLA leave was approved. *Id*. at 66:1-6.

At or around the time of her leave for knee surgery, several comments were made by her supervisors that made her nervous about her job security. The first, by Operations Manager Donnie Hicks, was that they would "do [their] best to keep [Plaintiff's] job open for [her]," while she was on FMLA leave. *Id*. at 66:23-24. Plaintiff responded that FMLA required them to keep her job open. *Id*. at 69:1-23. Mr. Hicks told Plaintiff Laing that she didn't know how FMLA worked and that he would just do his best. *Id*. Next, as Plaintiff was departing FedEx to begin her FMLA leave, Operation Manager Matt Bass told her, "we're going to do everything we can to get rid of your route while you're gone." *Id.* at 80:17-20. He was laughing at the time and said he was just kidding. *Id*. at 80:21-81:1. Plaintiff acknowledges that Mr. Bass made the statement because he thought it was funny. *Id*. at 81:9-10. Finally, while on leave, it came to Plaintiff's attention that her route had been dissolved, and she called Mr. Hicks to check the status of her route. *Id*. at 94:9-95:5. Mr. Hicks told her that he had dissolved her route, and she was basically displaced. *Id*. Plaintiff Laing then called Mr. Tolliver. He informed her that she had not been displaced and that her route would be reinstated as she had only been on leave for seventy three days. *Id*. at 95:8-14.

Plaintiff Laing returned to work on June 4, 2009. *Id*. at 100:6-11. When she arrived at her truck, she noticed that she had only about three stops, far fewer than normal, on her route. *Id*. at 12-18. A few hours later, Carol Scott called Plaintiff Laing into Ms. Scott's office and placed Plaintiff on paid investigative suspension for falsification of company records. *Id*. at 101:23-102:19. While on investigatory suspension, Plaintiff Laing was paid full time wages,

including earning eight hours of pay for the day she returned, June 4, 2009. Doc. No. 24, Attachment 1, Declaration of Gregg Taylor, at ¶ 6–7; Doc. No. 24, Attachment 2, Ex. C, PRISM Payroll Information, at 1–2. Plaintiff was terminated on June 30, 2009, for demonstrating a pattern of gaining time and padding her stops by logging packages at the same stop separately. Doc. No. 16, Ex. 14, Termination Letter from Carolyn Scott, at 2. From August 5, 1990, until her termination on June 30, 2009, Plaintiff was classified as a full time employee; at no time was her status changed to part time. Greg Taylor Dep. at ¶ 10; Doc. No. 24, Attachment 1, Ex. E, PRISM Dates. This termination, her second, was upheld through the GFTP, and her termination was finalized on July 31, 2009. Doc. No. 16, Ex. 15, Letter From M. Saladino, at 2. The GFTP did not allow Plaintiff Laing to copy the documents as she wished because they were company property; however, Laing was allowed to attempt to explain each instance of padding stops and gaining time. *Id*.

The investigation leading to Plaintiff Laing's termination began in February 2009, prior to the company being notified that Plaintiff Laing would be going on FMLA leave, and was conducted by Carol Scott, Wade Dark, and Gregg Taylor. Doc. No. 12, Ex. 5, Deposition of Wade Dark, at 104:9-17. To ensure the termination was based on adequate information, Ms. Scott looked at over thirty days of IIB23 information which charted Plaintiff's work progress. Doc. No. 12, Ex. 6, Deposition of Gregg Taylor, at 37:5-11. Wade Dark did not speak with Plaintiff Laing about the investigation prior to placing her on investigative suspension because, to him, "the facts [spoke] for themselves." Dark Dep. at 21:3-19.

## II. LEGAL STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 519 (4th Cir. 2003) (citing the *Celotex* standard as the rule from F.R.C.P 56(c)). The Court has observed that, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute over a material fact is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

When reviewing summary judgment motions, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). At summary judgment, it is inappropriate for the court to weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. "Once the moving party has met that burden, the nonmoving party must come forward and demonstrate that such an issue does, in fact, exist." *Bouchat*, 346 F.3d at 522 (relying on *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Summary judgment "may not rest upon the mere allegations or denials of his pleading, but [the] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586.

## III. ANALYSIS

Plaintiff Laing has brought claims under the Family and Medical Leave Act ("FMLA"), under the North Carolina Retaliatory Employment Discrimination Act ("REDA"), for common law wrongful termination, and for intentional infliction of emotion distress. Plaintiff has not created a genuine dispute on any claim. However, because REDA and wrongful termination actions relating to workmen's compensation "arise under" workmen's compensation, these claims were improperly removed to this court.

### A. Family and Medical Leave Act

Though not specified in the complaint, there are four situations involving potential Family and Medical Leave Act violations. The FMLA guarantees employees the right to take up to twelve weeks of leave for any of an enumerated list of reasons. 29 U.S.C.A. § 2612 (West 2009). Employers are prohibited from attempting to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's rights under FMLA and from discriminating against any employee for taking FMLA leave. § 2615(a)(1)–(2). To establish unlawful interference with an employee's FMLA benefits, the employee must prove that: "(1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Rodriguez v. Smithfield Packing Co.*, 545 F.Supp.2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).

Here, in each circumstance, only prongs four and five are disputed and Plaintiff Laing cannot survive Defendant's Motion for Summary Judgment on any of her FMLA claims. First, Plaintiff Laing returned to an equivalent position after her knee surgery. Second, a reasonable

jury could not conclude that she was sufficiently discouraged from taking an adequate amount of leave when she was diagnosed with pneumonia. Third, there is no evidence that Plaintiff ever requested intermittent leave for her physical therapy appointments. Fourth and finally, Defendant FedEx has established numerous nondiscriminatory reasons for terminating Plaintiff Laing which refute the inference that Plaintiff was terminated for taking FMLA leave.

1. **Equivalent Position**

Plaintiff Laing has provided evidence that while she was on leave her route was dissolved and she was assigned to a part time route. FMLA requires that employers return employees to the same position or to a position equivalent in "benefits, pay, and other terms and conditions of employment," when an employee returns from FMLA leave. 29 U.S.C.A. § 2614(a)(1) (West 2008). This right is only a limited right to restoration, not an absolute right to return to the same position. *Yashenko v. Harrah's NC Casino, Inc.*, 446 F.3d 541, 547 (4th Cir. 2006). An equivalent position is one that is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, prerequisites and status." 29 C.F.R. § 825.15(a) (2009). In *Howard v. Inova Health Care Services*, the Fourth Circuit found that the plaintiff had returned to equivalent position even though his duties were reduced because his pay and benefits were unchanged. Nos. 07-1885, 07-2035, 2008 WL 5110970, at *5 (4th Cir. Dec. 5, 2008) (per curiam).

Here, no genuine issue of material fact exists as to whether Plaintiff Laing was returned to an equivalent position. At the outset, it is worth noting that merely changing her route would not necessarily violate the FMLA as long as she was given a comparable route and comparable hours. Thus, the fact that her "route was dissolved" is less important than the assignment she received upon her return.

Prior to taking FMLA leave from March 23 until June 4, 2009, to undergo knee surgery, Plaintiff Laing had been working full time for Defendant FedEx. Plaintiff Laing asserts that upon her return to work on June 4th with a full duty release, she was only scheduled to make three stops, and had thus apparently been given part time work. Laing Dep. at 100:12-18. However, the Human Resources manager, Mr. Tolliver, maintained that the route was to be reinstated and would be a full time position when she returned. Tolliver Dep. at 117:18-25. These assertions are supported by her employment history which shows Plaintiff Laing was a full time employee from August 5, 1990, until her termination. Greg Taylor Dep. at ¶ 10; Doc. No. 24, Attachment 1, Ex. E, PRISM Dates. Furthermore, Laing received full time pay from the day she returned from FMLA leave until her termination. Doc. No. 24, Attachment 1, Declaration of Gregg Taylor, ¶ 6–7; Doc. No. 24, Attachment 2, Ex. C, PRISM Payroll Information, at 1–2. As in *Howard*, this evidence shows that Laing was returned to an equivalent position upon her return from FMLA leave.

### 2. Willful Violations of FMLA

Defendant FedEx did not willfully violate Plaintiff Laing's FMLA rights, and so Plaintiff's FMLA claims based on her pneumonia and physical therapy are time-barred. The FMLA imposes a two year statute of limitations unless the plaintiff can show a willful violation of the statute, in which case a three year statute of limitations is imposed. 29 U.S.C.A. § 2616(c) (West 2008). A willful violation exists where "employer knew or showed reckless disregard regarding whether its conduct was prohibited." *Settle v. S.W. Rodgers Co.*, No. 98-2312, 1999 WL 486643 at *3 (4th Cir. 1999) (comparing the definition of willful under FMLA to its definition under the Fair Labor Standards Act). Willful conduct is more than negligent

and must be voluntary, deliberate, or intentional. *Cf. McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 128 (1988) (defining willful for the Fair Labor Standards Act).

"No magic words are necessary to invoke the protections of the FMLA." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009). It is an employer's responsibility to construe request for leave as FMLA leave, when appropriate. *Id*. The employee must notify the employer of the reasons why he or she needs leave, such as being unfit to perform the job. 29 C.F.R. 825.302(c) (2009).[1] For planned leave and intermittent leave, employees are generally expected to discuss the schedule with their employer "work out a treatment schedule which best suits the needs of both the employer and the employee." *Id*. at (e). If the employee does not initiate such a discussion, the employer can require the employee to attempt to make arrangements so that the treatment does not interfere with his or her work. *Id*. Finally, in *Honeycutt v. Balt. County, Md.*, the court found that the County's history of granting FMLA leave requests supported their contention that the statute was not willfully violated. No. JFM-06-0958, 2007 WL 1858691, at *4 (D.Md. June 14, 2007) *aff'd by Honeycutt v. Balt. Cnty, Md.*, No. 07-1682, 2008 WL 2116404 at *1 (4th Cir. May 20, 2008) (per curiam).

      a.      **Pneumonia**

Plaintiff Laing filed her complaint more than two but less than three years after the alleged FMLA violations for her pneumonia. Doc. No. 1, Ex. A, Complaint, at 1; Laing Dep. at 34:6-11. For her claim to proceed, Plaintiff must show that Defendant FedEx deliberately violated her FMLA rights. However, she has not shown any evidence that her rights were deliberately violated. At most, Plaintiff has shown that Mr. Wade negligently asked her to return to work before reviewing the medical records she had sent to her manager, Ms. Scott, the night

---

[1] This regulation was revised in 2009, but the relevant portion was in effect for all times pertinent to this lawsuit.

before her return. Laing Dep. at 60:3-10. She did not request FMLA until she had returned to work. Tolliver Dep. at 85:20-21. Indeed, Plaintiff admits that when Mr. Wade saw her condition he told her to leave, but she refused, stating that she was, "already there . . . I wasn't going home." Laing Dep. at 36:18-23. Perhaps, Mr. Wade negligently failed to properly review her medical condition before asking her to return to work, but no evidence has been shown that he was willfully violating Plaintiff Laing's right to FMLA leave. Therefore, Plaintiff's claim is subject to the general FMLA two year statute of limitations and has been time-barred.

b.    **Physical Therapy**

Both parties may have failed their responsibilities under the FMLA when addressing intermittent leave, but because the Defendant's actions were not willful violations of the FMLA, Plaintiff's claim should be time-barred. Plaintiff has not provided any evidence that she requested leave to attend physical therapy. Doc. No. 15, Ex. 1-1, 1-2, Deposition of Kimberly Laing at 50:14-21. Nor has Plaintiff produced any evidence she was unfit to work or that she gave such documentation to Defendant FedEx. Plaintiff also did not discuss using her lunch break to attend therapy. *Id*. at 43:10-12. Still, she did use her lunch break in such a manner twice a week for four weeks in an apparent attempt to avoid missing work. *Id*. at 48:7-11. When she was informed by Wade Dark that attending physical therapy during her lunch was not conducive to FedEx's schedule, she did not attempt to reach an accommodation. *Id*. at 48:12-50:21.

Like the defendant in *Honeycutt*, Defendant FedEx's history of granting Plaintiff's requests for leave, both prior to and after the physical therapy situation, weighs against a finding of willfulness. Mr. Dark could have suggested intermittent FMLA leave, but this failure does not rise to the level of willful misconduct that would allow Plaintiff to pursue her claim after the

general FMLA statute of limitations has run. Plaintiff's claim is therefore time-barred by the two year statute of limitations.

### 4. Wrongful Termination under FMLA

Plaintiff Laing has merely asserted that she disagrees with her termination, but she has not shown that the reasons given for her termination were mere pretext for discrimination. Retaliatory discrimination claims brought under the FMLA are analogous to those brought under Title VII. *Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 550–551 (4th Cir. 2006). The Title VII framework requires a plaintiff to make out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant to make a showing of nondiscriminatory motives for the termination. *Id*. Once a defendant has provided legitimate, nondiscriminatory motives, the plaintiff then has the burden of showing that the stated motivations are merely pretext for discrimination. *Id*. at 804.

The prima facie case for discrimination under the FMLA has three prongs: (1) that the plaintiff engaged in a protected activity (taking FMLA leave); (2) that the plaintiff was terminated; and (3) that a causal nexus exists between the plaintiff taking leave and his or her termination. *Yashenko*, 446 F.3d at 551. Close temporal proximity between the leave and the termination is enough to meet the prima facie burden of causality. *Id*. (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). When an employer provides nondiscriminatory motives for the termination, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Cf. Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc*., 133 F.3d 293, 299 (4th Cir.1998)). A plaintiff cannot prove pretext merely by disagreeing with the evaluations given by her supervisor. *Id*. at 280

Here, Plaintiff Laing has met her prima facie burden but has failed to show that Defendant FedEx's reasons for termination are pretextual. Plaintiff Laing was placed on investigative suspension within hours of returning from her FMLA leave for knee surgery. Laing Dep. at 101:23-102:19. She was terminated within the month. Doc. No. 16, Ex. 14, Termination Letter from Carolyn Scott, at 2. The close temporal proximity between her return and her termination is enough to establish a prima facie case of discrimination under the FMLA.

However, Plaintiff has failed to do more than disagree with her employer's reasons for her termination. Defendant FedEx has provided voluminous evidence through the IIB23 reports of what the Defendant considers to be termination-worthy falsification of company records. Plaintiff was terminated previously for the same offense, given a second chance, and warned that should she fail to follow proper procedures in the future, she would be terminated. Doc. No. 16-6, Ex. 16, Letter from Tim Merida, Exhibit 16 at 2. The investigation leading to Plaintiff's termination began in February, before Plaintiff notified FedEx that she would need FMLA leave for knee surgery. No. 12, Ex. 5, Deposition of Wade Dark, at 104:9-17.

Plaintiff never disputes that the suspicious IIB23 reports are in fact unacceptable under company policy, but merely provides explanations for why her record is unusual. *See* Doc. No. 18, Ex. 17, Declaration of Kimberly Laing ¶ 10, April 6, 2011. Plaintiff had been warned and was aware that Defendant FedEx had a zero tolerance policy with regard to falsification. Laing Dep. at 168:1-169:24. Reading Plaintiff's explanations for her suspicious IIB23 reports in a light most favorable to her, Plaintiff appears to be someone who values customer service over following company protocol precisely. Laing Declaration at ¶ 10. It was therefore perhaps unwise for Defendant FedEx to terminate her employment, however, it is not the court's role to determine the intelligence of Defendant FedEx's employment decisions. Because plaintiff

provides no evidence that Defendant FedEx's stated reasons were mere pretext for discrimination, Plaintiff has not created a genuine dispute over whether she was terminated for exercising her FMLA rights.

B. **North Carolina Retaliatory Employment Discrimination Act**

Because North Carolina Retaliatory Discrimination Employment Act claims based on workers' compensation are considered to "arise under" workers' compensation, this court lacks jurisdiction to hear these claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss action." FED.R.CIV.P 12(h)(3). "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c) (2006). The North Carolina Retaliatory Employment Discrimination Act prohibits employers from terminating employees for filing a workers' compensation claim. N.C. GEN. STAT. ANN § 95-241(a) (West 1993). REDA has long functioned to allow employees to pursue their workers' compensation benefits without fear of retribution. *Wiley v. United Parcel Service, Inc.*, 227 F.Supp.2d 480, 487 (M.D.N.C. 2002). Indeed, "[t]he action for retaliatory discharge is integrally related to the just and smooth operation of the workers' compensation system." *Arthur v. E.I. DuPont de Nemours & Co.*, 58 F.3d 121, 128 (4th Cir. 1995). Therefore, the portions of REDA which relate to workers' compensation "arise under" workers' compensation. *Wiley*, 227 F.Supp.2d at 488; *Arnett v. Leviton Mfg., Inc.*, 174 F.Supp.2d 410, 417 (W.D.N.C. 2001).

Here, Plaintiff Laing has brought a case under REDA alleging that she was discriminated against for filing a workers'' compensation claim. Doc. No. 1, Ex. A, Complaint at 9. To avoid interfering with the smooth functioning of North Carolina's workers' compensation system, the court must remand this claim back to the Mecklenburg County Superior Court.

C. **Wrongful Discharge in Violation of Public Policy**

By the Complaint's own terms, the public policy allegedly violated was codified by REDA. Complaint at 10. Claims asserting that a plaintiff has been discriminated against in retaliation for filing a workmen's compensation claim cannot be removed to federal court. *See* discussion *Supra* Section B. It would undermine the protection given to workers' compensation claims to allow removal of wrongful termination claims explicitly based on REDA when REDA claims themselves cannot be removed.

D. **Intentional Infliction of Emotional Distress**

Plaintiff cannot survive summary judgment on her intentional infliction of emotional distress claim because she has not created a genuine dispute over whether FedEx engaged in extreme and outrageous conduct. Intentional infliction of emotional distress claims require a plaintiff to prove three elements: "(1) extreme and outrageous conduct, (2) which is intended to and does cause, (3) severe emotional distress to another." *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 325, 528 S.E.2d 368, 371 (N.C. Ct. App. 2000); *see also* RESTATEMENT (SECOND) OF TORTS § 46(1). Whether or not conduct is extreme and outrageous is a question of law for the court to answer. *Simmons*, 325, 528 S.E.2d at 372. Conduct is extreme and outrageous when it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354, 595 S.E.2d 778, 792 (N.C. Ct. Ap. 2004) (citations omitted).

Mere insults, indignities, and threats do not constitute extreme and outrageous conduct because plaintiffs "must necessarily be expected and required to be hardened to a certain amount

of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Haburjak v. Prudential Bache Securities, Inc.*, 759 F.Supp. 293, 303 (W.D.N.C. 1991). Courts are reluctant to find conduct arising from an employment context to be extreme and outrageous. *Smith v. Computer Task Group, Inc.*, 568 F.Supp.2d 603, 621 (M.D.N.C. 2008). Even conduct sufficiently discriminatory to establish a REDA claim will usually fail to establish intentional infliction of emotional distress. *Id.* In *Lorbacher v. Housing Authority of City of Raleigh*, the North Carolina Court of Appeals found that a plaintiff who was fired to deflect responsibility for several deaths and as retaliation for the plaintiff's exercise of his First Amendment rights was not subjected to extreme and outrageous conduct. 127 N.C.App. 663,676 493 S.E.2d 74, 82 (1997). Similarly, in *Trought v. Richardson*, the N.C. Court of Appeals found allegations that a plaintiff's managers had spread false allegations about the reasons for her termination insufficient to establish intentional infliction of emotional distress. 78 N.C.App. 758, 763, 338 S.E.2d 617, 620 (1986).

  Here, Plaintiff's Complaint does not specify the conduct to be classified as extreme and outrageous. *See* Complaint at 10. However, in her deposition, Plaintiff Laing asserted that the wrongful termination was the basis of her intentional infliction of emotional distress claim and that "violation of the laws are outrageous." Laing Dep. at 146:10-24. This assertion is incorrect. A wrongful, even retaliatory, termination does not rise to the level of extreme and outrageous conduct. Further, Plaintiff can only identify one instance where an employee of FedEx, Wade Dark, made her feel uncomfortable through the tone of his voice. Laing at 56:6-15.

  Because the first element of Plaintiff Laing's intentional infliction of emotional distress claim has not been met, the court does not need to address the other elements. However, even if Laing's depression constitutes a severe emotional disturbance, it is likely not attributable to

Defendant FedEx because Plaintiff began therapy for her depression in 2004, a year prior to any of the events discussed in this lawsuit. Laing Dep. at 115:18-22. No genuine issue of material fact exists as to the Plaintiff's intentional infliction of emotional distress claim, and thus Defendant's Motion for Summary Judgment should be granted as to this claim.

**IV. Conclusion**

Defendant's Motion for Summary Judgment should be granted against all but two claims because Plaintiff Laing has not provided sufficient evidence to create a genuine dispute over her FMLA claims and her claim for intentional infliction of emotional distress. The two claims based on REDA should be remanded to the Superior Court of Mecklenburg County because this court does not have subject matter jurisdiction to hear these claims.

**ACCORDINGLY, IT IS THEREFORE ORDERED THAT:**

1. Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff Laing's First and Fourth Causes of Action.

2. Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff Laing's Second and Third Causes of Action.

3. Plaintiff's Second and Third Causes of Action are **REMANDED** to the Mecklenburg County Superior Court for further consideration.

**SO ORDERED**.

Signed: October 13, 2011

Graham C. Mullen
United States District Judge